## Logue's Appeal.

1. The rule that a deed, absolute on its face (dated prior to the Act of June 8th 1881), may be shown by parol evidence to have been intended as security for the payment of money, is applicable as well to the case of a sheriff's deed as to a deed between private parties.

2. The parol evidence to show the defeasible character of a deed absolute on its face, must be clear, specific and unequivocal; but the fact that such evidence is opposed by other evidence, however conflicting, is no bar to the application of the rule; in such case it is the function of a Master to pass upon the credibility of the witnesses and determine the facts.

3. Where, in such a case, the Master reported that the evidence "preponderated strongly in favor of the plaintiff, and established beyond any reasonable doubt, to the Master's satisfaction," the facts averred in the bill; and the Master's finding was approved by court below: *Held*, that, in the absence of plain mistake or flagrant error, the Master's findings of fact would not be disturbed.

4. A. filed a bill in equity against B., averring these facts: That A. bid off certain real estate at sheriff's sale, under his own and other executions, and then agreed verbally with B. for a loan with which to pay the purchase money, B. to receive and hold the sheriff's deed, as security for payment of the loan; that after the transaction was so consummated, B. repudiated the agreement and claimed to hold the title in his own right; the bill prayed that the sheriff's deed be declared to be a mortgage, and for a reconveyance. The answer denied the averments of the bill, and the parol testimony taken before an Examiner and Master was conflicting. The Master found the facts to be as averred in the bill, and, this finding being approved, the court entered a decree declaring that the defendant held the deed as a mortgage, and enjoining him from conveying or incumbering the premises:

*Held*, that the decree was right as far as it went, but that it should be extended so as to grant the further relief prayed for, to wit, a reconveyance by defendant to plaintiff, upon payment of the amount ascertained to be due by plaintiff to defendant.

October 1st 1883. Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark, JJ. Paxson, J., absent.

Appeal from the Court of Common Pleas of *Clarion county :* In equity : Of October and November Term 1883, No. 113.

This was an appeal by John Logue, Sr., from a decree declaring a certain sheriff's deed to him, absolute on its face, to be a mortgage, and enjoining him from conveying or incumbering the premises, &c.

Bill in equity, filed November 1st 1879, between John Logue, plaintiff, and John Logue, Sr., defendant, setting forth as follows :

(1) That complainant had a judgment of $2,000 against Eli Logue, on which a fi. fa. was issued to No. 322, August Term

1879, on which the sheriff of Clarion county, levied and advertised for sale as the property of said Eli Logue, a certain tract of land, known as the Logue farm, in Perry township, in said county, containing 274 acres, more or less, bounded, &c. The said property was at the same time advertised for sale as the property of said Eli Logue at the suit of Sarah Jane Slattery.

(2) At the same term, the said tract of land was levied upon and advertised by the sheriff to be sold as the property of Reuben Logue at the suits of J. V. Ritts, cashier; H. Collner & Bro., and others.

(3) That on the 23d of August 1879, after due and public notice the said tract of land was cried and sold by the sheriff to the plaintiff, as the property of said Eli Logue on the said writs of the plaintiff and Sarah Jane Slattery for $100; and that it was also cried and sold to the plaintiff on the said writs of J. V. Ritts et al., as the property of the said Reuben Logue, for $6,110.

(4) That after said property was so knocked down to the plaintiff, the defendant, John Logue, Sr., agreed with the plaintiff to lend him the money so bid ($6,110) until the plaintiff could refund the same with interest; and as security for said loan it was agreed and arranged between plaintiff and defendant that the sheriff's deed for said property should be made directly to the defendant instead of to the plaintiff, and to be held by defendant in the nature of a mortgage until plaintiff could and would repay him the said money with interest thereon—and the sheriff's deed was executed, acknowledged and delivered accordingly.

(5) That soon after defendant obtained the sheriff's deed for the property as set forth in the preceding paragraph, he fraudulently repudiated the said arrangement and agreement, and asserted and pretended, and still asserts and pretends, that he holds the legal title to said premises absolutely in his own right and free and clear of any trust for or equity of redemption in the plaintiff.

(6) That on the 14th of October 1879, the plaintiff tendered to defendant in repayment of said loan and interest thereon, $6,200, which defendant refused to accept, and the plaintiff is still ready and willing to repay the same to defendant as the court shall order or direct.

The bill prayed: (1) That the said deed so held by defendant may be declared to be a mortgage, and that the defendant may be enjoined from taking possession of said premises or the rents, issues or profits thereof. (2) That the defendant may be decreed to re-convey the said tract of land to the plaintiff. (3) Further relief.

The respondent, in his answer, denied the agreement and arrangement set up in the bill, and averred, in substance, that the complainant had bid in the property at said sheriff's sale, acting as respondent's agent; that he (respondent) had paid the purchase-money, and bought the premises absolutely, and in his own right and free and clear of any trust or equity in complainant. It was admitted that the defendant obtained possession of the premises after the bill was filed.

Before the Master and Examiner (James Boggs, Esq.) voluminous testimony was taken in support and contradiction of the averments of the bill. The complainant testified directly as to the making of the alleged agreement, and he was corroborated in all essential details by several other witnesses. The respondent testified as positively in contradiction of such agreement, and was also supported in his testimony by that of several other parties. A great many witnesses were offered to establish or impeach the reputations for veracity of the leading witnesses.

The Master, after reviewing the testimony, and citing authorities, reported as follows:

"In the light of these authorities, and upon full consideration of all the evidence, without further commenting upon the weight, weakness or contradictions therein, on either side, in our judgment it preponderates strongly in favor of plaintiff; and establishes beyond any reasonable doubt, to our satisfaction, the complaint set up in this bill. We therefore find the facts stated in plaintiff's bill to be substantially true and correct, and content ourselves by this reference thereto, without extending this report by re-writing them here."

It having been contended by counsel for the respondent, that complainant, by his own showing, had no such interest in the premises as could be mortgaged; the Master reported as matter of law that the complainant had such an inceptive interest in the property by his bids, as enabled him to make the alleged agreement.

The Master therefore reported a decree that the sheriff's deeds in question be declared to be mortgages in the defendant's hands; that the respondent re-convey the property to complainant upon re-payment of the loan, less any rents or profits issuing from the land during the possession of the respondent, and that a Master be appointed to state an account between the parties, and state what amount, if any, remained due upon the loan.

Exceptions filed to this report both as to findings of fact, and conclusions of law, were dismissed by the court, and a decree was entered that the deeds made and delivered by the sheriff of Clarion county to John Logue, Sr. " be declared to be

taken and held by said defendant as a mortgage to secure the payment of a loan of $6,110, made by defendant to plaintiff, August 23d 1879 ; and that defendant be hereby enjoined from conveying or incumbering the said premises."

The defendant thereupon took this appeal, assigning as error the dismissal of his exceptions and the entry of the above decree.

*Jenks* (*J. & R. D. Campbell, Wilson, Maffett & Ross* with him), for the appellant.—At the time of the sheriff's sale the plaintiff below was a stranger to the title ; and the case is an attempt to establish by parol evidence that the grantee in an absolute deed agreed orally to hold the property for the benefit of another who paid none of the purchase money, and where it was not alleged that any resulting trust, or trust ex maleficio arose by reason of the grantee's fraud, artifice, or solicitation in inducing the execution of the deed.   Such evidence is clearly inadmissible under the Act of April 22d 1856, and the authorities :   Payne *v.* Patterson, 27 P. F. S. 134 ; Barnet *v.* Dougherty, 8 Cas. 371 ; Jackman *v.* Ringland, 4 W. & S. 149 ; Kellum *v.* Smith, 9 Cas. 158 ; Robertson *v.* Robertson, 9 Watts 32 ; Wolford *v.* Herrington, 5 Norris 39 ; First National Bank of Carbondale *v.* Cowperthwaite, 10 W. N. C. 532 ; Yeager and Grims' Appeal, 4 Out. 88.   This case is not within the line of cases holding that an absolute deed may be shown by parol to be a mortgage, for the reason that the plaintiff never had any title to the land capable of being mortgaged.   The doctrine that one to whom property is struck off at sheriff's sale has an inceptive title before execution of sheriff's deed, on which a judgment may become a lien, is based on the assumption of payment of purchase money and the subsequent delivery of a sheriff's deed in fact, which deed relates back for some purposes (not all) to the date of the sale.   But if property is struck off at sheriff's sale to A. who, without having paid any purchase money, executes a mortgage thereof, and no sheriff's deed is ever acknowledged to him, but such a deed is duly made to another, to whom he turns over his bid, and who pays the purchase money, the mortgage falls for want of title in the mortgagor.   In other words, the " inceptive interest " proves barren.   Such purchaser could not maintain ejectment, and his mortgagee's title can rise no higher :   Hall *v.* Benner, 1 Pa. Rep. 402 ; Payne *v.* Patterson, 27 P. F. S. 134.

But were this otherwise, the parol evidence in this case did not come up to the standard requisite to show the defeasible character of a deed absolute on its face.   Evidence clear, precise, unequivocal, indubitable, not of mere declarations, but of facts and circumstances outside of the deed and inconsistent

with the idea of an absolute purchase—such is the measure of
proof: Todd *v.* Campbell, 8 Casey 250 ; Burger *v.* Dankel, 4
Out. 113 ; Campbell *v.* Patterson, 14 Nor. 447 ; Thorne, Mc-
Farlane & Co. *v.* Warfflein, 4 Out. 519.

*B. J. & A. B. Reid* (with them *W. L. Corbett*), for the
appellee.—The argument founded on the statement that the
appellee paid no purchase money, is erroneous; the defendant
having loaned him the money, it was his money, and not the
defendant's, that paid the purchase money: Fredericks *v.* Cor-
coran, 4 Out. 413. The appellee was no stranger to the title.
He had an interest in the land by his bid and purchase. Such
a purchase is not within the statute of frauds, and requires no
writing to make it valid. A purchaser at sheriff's sale, before
deed acknowledged, has an inceptive interest in the land, by
the contract, which may be bound by a judgment: Richter *v.*
Selin, 8 S. & R. 440 ; Morrison *v.* Wurtz, 7 Watts 437 ; Robb
*v.* Mann, 1 Jones 305 ; Slater's Appeal, 4 Casey 169 ; Stewart
*v.* Reed, 10 Norris 289.

This court will not reverse a Master or Auditor's finding of
facts, approved by the court below, especially where the facts are
found on oral testimony, unless the error is flagrant: Sproull's
Appeal, 21 P. F. Smith 138 ; Kisor's Appeal, 12 Id. 428 ;
Burrough's Appeal, 2 Casey 264 ; Miller's Appeal, 6 Casey
478 ; Mellon's Appeal, 8 Casey 121 ; Rudy's Estate, 2 W. N.
C. 674.

Mr. Justice STERRETT delivered the opinion of the court,
October 22nd 1883.

In considering and weighing the evidence, and in drawing
his conclusions therefrom, the learned Master appears to have
proceeded on substantially correct principles ; and an exam-
ination of the evidence satisfies us that it was quite sufficient,
both in kind and degree, to warrant his conclusions of fact,
and justify the court below in sustaining them. As to the
averments of the bill which constitute the equity of plaintiff's
case, he introduced testimony that was clear, distinct and pos-
itive. The testimony of Mr. Slattery, as well as that of the
plaintiff himself was clearly of that character. In addition
thereto, they were fully sustained by the corroborating evi-
dence of several witnesses, as to material allegations of the bill.
If this testimony was believed, the sufficiency of the evidence
in a legal point of view, to convert a deed, absolute in its face,
into a mortgage, cannot be doubted. It was clear, precise and
indubitable. It is true, there was conflicting testimony, as to
all the essential features of the case, but the proper function of
a Master, in such cases, is to consider the testimony, pass upon

the credibility of the witnesses and thus determine the facts. If the existence of conflicting testimony, introduced perhaps by guilty parties, for the very purpose of shielding themselves, were always sufficient to render the evidence, as a whole, doubtful or uncertain, few fraudulent transactions would be exposed or thwarted. When properly ascertained, in the duly appointed way, the facts must be accepted as true. It has long been the settled practice of this court not to disturb the findings of an Auditor or Master which have been approved by the court, especially when they are based on oral testimony, except in cases of plain mistake, affirmatively shown or apparent on the face of the record. In this case, nothing of the kind appears in any form, and hence it follows, that the several specifications of error relating to the Master's conclusions of fact and the action of the court upon exceptions thereto are not sustained.

After an elaborate discussion of the testimony and reference to authorities bearing thereon, the learned Master says: "In the light of these authorities and upon full consideration of all the evidence, without further commenting on the weight, weakness or contradictions therein, on either side, in our judgment it preponderates strongly in favor of plaintiff, and establishes to our satisfaction beyond a reasonable doubt the complaint set up in this bill. We therefore find the facts stated in plaintiff's bill to be substantially true and correct, and content ourself by this reference thereto without extending this report by repeating them here."

The substance of the controlling facts thus established is, that at a sheriff's sale, in August 1879, of the respective interests of Eli Logue and Reuben Logue in a certain tract of land, the appellee was a bidder, and became the purchaser of said interests for the aggregate sum of $6,110; that shortly afterward appellant agreed to loan appellee the money with which to pay his bid, and it was then agreed, by and between them, that as security for the loan, the sheriff's deeds for the property so purchased by appellee should be made directly to appellant, to be by him held, as a mortgage, until the money loaned, with interest thereon, was repaid, and accordingly the sheriff's deeds for the property were executed, acknowledged and delivered to appellant; that soon thereafter appellant fraudulently repudiated said agreement and claimed to hold the legal title to the land absolutely in his own right, free and clear of any interest of appellee therein; that, in October 1879, appellee tendered appellant the full amount of the loan and interest thereon which the latter refused to accept. The Master also finds that since the filing of the bill appellant was regularly put in possession

of the land and then held the same under the sheriff's deeds above mentioned.

The question then is, whether upon the facts thus established the appellee was entitled to a decree declaring the sheriff's deeds to be in fact morgages, and ordering appellant, upon payment of the money secured thereby, to convey the legal title to the land therein described to the appellee. In some of its features the transaction differs from the familiar case of an absolute conveyance of land by the holder of the legal title, as security merely, and so intended by the parties thereto ; but, in principle it is the same. Equity regards the substance rather than the form of a transaction. By his purchase at the sheriff's sales, appellee acquired an inceptive title to the land in question, which by payment of purchase money and delivery of deeds would have ripened into a complete legal title. He had such an interest as would have been bound by the lien of a judgment entered between the date of sale and the acknowledgment and delivery of the sheriff's deeds. But, instead of taking the deeds in his own name and then mortgaging the land to secure the loan made by appellant, it was suggested by the latter that the deed should be made directly to him, as security for the loan. This was agreed to and the arrangement was carried out. The manifest purpose of this was not to vest title absolutely in appellant, but to enable appellee to raise money to pay his bid, by pledging the land as security for its repayment. Appellant's subsequent repudiation of the agreement, under which the deeds were made to him directly, and his attempt to use the deeds for a purpose that was never intended when he obtained them, is a palpable fraud, against which equity, under the facts and circumstances found by the Master, will undoubtedly afford relief.

The decree of the court below declaring that the sheriff's deeds be taken and held to be mortgages, given to appellant, to secure the payment of the $6,110 loan, made by him to appellee in August 23d 1879, and enjoining appellant from conveying or encumbering the premises, etc., is correct as far as it goes, but it does not go quite far enough. It should also provide that upon repayment of the loan, or, so much thereof as remains unpaid, within a reasonable time, appellant shall convey the land in fee to appellee, by deed, with covenant of special warranty against all acts done or suffered by himself. This decree may be enforced by attachment, or a Master may be appointed by the court for the purpose of making the conveyance. It appears that since the decree was entered the case has been sent to a Master for the purpose of stating an account between the parties and ascertaining the balance due by appellee to appellant. The sum to be paid by appellee to entitle

him to a conveyance of the land will thus be ascertained and the decree can then be carried into effect by the court below.

> Decree affirmed and appeal dismissed at the costs of appellant; and, it is further ordered and decreed that upon payment of the amount due by appellee to appellant, within sixty days after the same is definitely ascertained by agreement of the parties or the decree of court, with interest thereon to day of payment, the said appellant shall, by deed of special warranty against all acts done or suffered by himself, convey to plaintiff below in fee simple the land described in the sheriff's deeds, and it is ordered that the record be remitted to the court below with instructions to carry this decree into effect.