# AUGUST AHLBORN v. WILLIAM WOLFF.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 28, 1887—Decided January 3, 1888.

In suit by Ahlborn against Wolff, Wm., on a note made by Wolff, R. C., to order of Wolff, Wm., indorsed consecutively by Ahlborn, Wolff, Wm., and Ortman, paid by Ahlborn after maturity and protest, evidence that the note was a renewal of an original by the same maker with Ahlborn as payee and first indorser and Wolff, Wm., second indorser, and that when indorsed by defendant the body was in blank and he indorsed it expecting and understanding, but without express agreement, that it was to be filled as said original, is insufficient to be submitted to the jury to affect the written instrument or to authorize its reformation on the ground of mistake.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 121 October Term 1887, Sup. Ct.; court below, No. 124 September Term 1886, C. P. No. 1.

On June 25, 1886, an action of assumpsit was brought by August Ahlborn against William Wolff, to recover upon a promissory note which was as follows:

$746.79　　　　　PITTSBURGH, December 18, 1885.

Four months after date, I promise to pay to the order of William Wolff, seven hundred and forty-six dollars and seventy-nine cents, ($746.75.)　At

R. C. WOLFF.

Value received.

[Endorsed]

AUGUST AHLBORN.
WILLIAM WOLFF.
J. H. ORTMAN & CO.

At the trial on May 2, 1887, it appeared that the note had been discounted by the Duquesne National Bank for J. H. Ortman & Co., the last indorsers. On notice of protest for

non-payment, it had been lifted from the bank by August Ahlborn, who then brought suit against William Wolff to recover the amount thereof. The note admitted in evidence, the plaintiff rested.

William Wolff, defendant, called:

Counsel for defendant proposes to prove by the witness on the stand that his indorsement of the note in dispute was made prior to that of August Ahlborn, the plaintiff in this case, and upon the distinct understanding and agreement with the said August Ahlborn and R. C. Wolff, the maker and first indorser of the note, that he was to be secondarily liable, and that the insertion of the name of William Wolff as payee of the note, was by mistake upon the part of J. H. Ortman & Co., the third indorser and parties who filled out the note.

Objected to for the reason that it is contrary to the statute of frauds; that it is an agreement to pay the debt of a third party, and not being in writing it would be within the statute.

Objection overruled.[1]

Under this offer and exception taken, the defendant introduced evidence claimed to establish the following facts :

That the note in suit was the last of a series of renewal notes, the original note having been given by R. C. Wolff, the maker, to J. H. Ortman & Co., for merchandise ; that the original note and all the subsequent renewals thereof, except the note in suit, were made by R. C. Wolff, payable to the order of August Ahlborn, and indorsed, first, by August Ahlborn, second, by William Wolff, and third, by J. H. Ortman & Co., for which firm the notes were from time to time discounted by the Duquesne National Bank of Pittsburgh; that the defendant indorsed the note at the request of R. C. Wolff, for the purpose of enabling him to renew the preceding note ; that at the time the defendant put his name on the back of the note the body of the note was in blank, and there were no other indorsements on the back of it; that the defendant indorsed the note and handed it to R. C. Wolff, in the absence of August Ahlborn, and without any understanding or agreement, or even conversation, with Ahlborn or with any one else, as to the way in which the note should be filled up, or whose name should be inserted as payee, or as to the order in which they (the plaintiff and defendant) should be

liable as indorsers thereon; that after the note in suit had
been indorsed by the plaintiff and defendant, as aforesaid, it
was delivered by R. C. Wolff, to J. H. Ortman & Co., who
filled up the blanks in the body of the note, and indorsed it
and had it discounted.

In rebuttal the plaintiff testified that when he indorsed his
name upon the note, the face of it was filled up as when suit
was brought, and testimony was adduced in corroboration of
this statement.

The court, STOWE, P. J., charged the jury:

It seems there was a series of notes in which R. C. Wolff
was maker, August Ahlborn, plaintiff in this case, payee, and
William Wolff, the second indorser. They were given to par-
ties who got them discounted in bank, and they were not paid,
but renewed from time to time. . . . . When the note, of
which the one in suit was a renewal, matured, if Ahlborn had
paid it he could not have made the money off William Wolff;
but if William Wolff had paid it he could have made his money
off Ahlborn or the maker. Ahlborn could also make it off
the maker. This being the case, and they standing thus lia-
ble, the parties to whom the note was given didn't see fit to
exact the money, and there was a renewal.

[In the absence of any arrangement, where a note has been
made in a certain way, the presumption is that it was made
that way with the understanding and agreement of the par-
ties; I do not say that it is a fact, but it would be a natural
conclusion. When renewed, if nothing were said, the pre-
sumption is that the party who indorsed the note in blank,
put and intended to put his name just exactly where it was
before, and therefore, in this case the notes should have been
drawn as the other was, to Ahlborn as payee, and indorsed
first by Ahlborn. That is the presumption apart from any
fact which would change the natural inference.] [2] Whether it
is sufficiently strong is for the consideration of the jury. It
would be the natural conclusion that would arise from the
facts, and that is all we can say to you about it, so far as pre-
sumptions are concerned. There is no direct proof on the
subject so far as I caught it, but my attention was diverted
part of the time.

Charge of Court below.

[The allegation of the defendant here is that he signed the note, expecting, as he would have a right to expect, that it would be as it was before, the relation of the names to each other would be as before, the note would be in the same form; and that he put his name, without any agreement to the contrary, upon a note that had not anything on it. If that is true, it would justify the jury in finding a verdict for the defendant;] [3] or, if there was a mistake, or a fraud perpetrated on him by the change of these names, he would not be bound to pay it. The man primarily liable, August Ahlborn, was the man up to that time who was bound to pay, if R. C. Wolff didn't pay; and if Ahlborn did pay it, he could not have made the money off William Wolff, because he was a subsequent indorser. But if, as alleged by the plaintiff, William Wolff put his name on the back of this note, when his name as payee was in the note, then, without he was deceived or defrauded, and there is not a particle of testimony as to that, and I may say it was his business to look at it for himself, if he put his name on the note without any fraud or concealment on the part of Ahlborn or anybody else in reference to the matter, he has fixed his liability. If William Wolff put his name on the back of this note, knowing as he ought to have known—for it was his business to look that it was in the note—he would be responsible as the first indorser; and if Ahlborn put his name on afterwards that would amount to nothing; and having paid the note, he then became the holder of it and would have a right to recover off William Wolff. That is the first question, was William Wolff's name as payee in this note at the time he signed it? If it was, it is very clear your verdict should be for the plaintiff.

[If, however, as Wolff alleges, this was one of a series of notes renewed as I have indicated, was not filled up, as he says it was not, and the name of the payee was not written in it—it is not so material about the other matters—and he indorsed it expecting and understanding, without saying a word about it, that he was to indorse it just as before, be the second indorser; without there is something in the case that would justify the jury in coming to the conclusion, in view of the whole transaction, that the arrangement was different, your verdict should be for the defendant, otherwise it should not.] [4]

In looking at that matter you must consider the whole transaction from the beginning. There may have been no distinct understanding, and it may have been a matter that was entirely indifferent between them as to who indorsed the note, for one was a cousin of the drawer and the other a friend. As far as the parties who held the note are concerned, it didn't make a bit of difference whether Ahlborn was the first or second indorser. He and William Wolff were both equally liable to them, and they could recover from either. Ahlborn and William Wolff could change their liability just as they pleased. Ahlborn could say to Wolff, "I have been first indorser long enough, I wont be so any more." Wolff then could say, "Well, let the note go to protest, and I will renew and make myself the first indorser;" or they could make any other arrangement between themselves they pleased. In the absence of proof on that subject, it is for the jury to take all the facts together and draw their own inferences and conclusions as to what was probably the understanding between these parties, and base their verdict upon that conclusion. If the note in suit was filled out with the name of William Wolff as payee when he indorsed it, your verdict should be for the plaintiff, because, as I said before, he could change the position of his name on the back, and at any rate it was his business to look at it for himself. In that case he put it there knowing, or he ought to have known, that he was the payee, and he cannot repudiate the transaction.

The verdict of the jury was for the defendant. Thereupon, judgment being entered, the plaintiff took this writ assigning for error:

1. The admission of defendant's offer.[1]

2–4. The parts of the charge embraced in [ ][2][3][4]

*Mr. J. M. Garrison* (with him *Mr. H. W. Wier*), for the plaintiff in error:

Ahlborn having paid off the note and lifted it, he is to be treated as the owner and holder for value by purchase from the bank after maturity, taking it, therefore, subject to any valid defence which William Wolff, or any other party to it, might have.

1. Assuming, then, that when William Wolff indorsed the

note, the face of it was in blank, and that his name was subsequently inserted as payee by mistake, it is conceded the plaintiff could not recover against him. But whether or not such mistake was made, depends upon whether the insertion of defendant's name as payee was in accordance with the general authority given when he indorsed, or whether under the facts and circumstances this general authority was definitely limited. Unless therefore the evidence was sufficient to establish that the defendant expressly or by necessary implication limited this general authority, there was no mistake shown. It is doubtful whether, in such a case as this, a limited authority, as against the general authority, could arise by mere implication; at all events, the evidence to raise such an implication must be precise, clear and indubitable, and such as would warrant a chancellor in decreeing the reformation of the written instrument.

2. The defendant's evidence that the note was blank when he indorsed it, was meagre and unsatisfactory. On the other hand, the plaintiff testified distinctly that the body of the note was then filled. If the defendant's name was in the body of the note at the time of his indorsement, the plaintiff could recover. The court so charged, but we urge that the court erred in not also instructing that if the jury found that the body of the note was not filled, the evidence was insufficient to establish that the defendant's name was afterwards inserted by mistake.

3. The evidence of fraud or mistake, to reform a written instrument, must be clear, precise and indubitable; not loose, equivocal or contradictory, not open to doubt or to opposing presumptions. The proof must strike all minds alike as being unquestionable and free from doubt; otherwise, it should not be submitted to the jury: Stine v. Sherk, 1 W. & S. 195; Miller v. Smith, 33 Pa. 386; Edmonds's App., 59 Pa. 220.

No argument was submitted for the defendant in error.

OPINION, MR. JUSTICE STERRETT:

In the absence of evidence dehors the note in suit and its indorsements, the legal relation of defendant to plaintiff is that of payee and first indorser; and the note having been

duly protested for non-payment, he is prima facie liable for principal, interest and costs of protest.   To escape that liability defendant undertook to show that by mistake his name, instead of plaintiff's, was inserted in the body of the note as payee ; in other words, he assumed the burden of so reforming the instrument as to make plaintiff payee and first indorser instead of himself.   Under our peculiar system of jurisprudence, this may sometimes be done, even in the case of a negotiable instrument; but the evidence that will warrant such reformation of the instrument, on the ground of mistake, must be clear, precise and indubitable.   In such cases, the trial judge exercises the functions of a chancellor, and, unless the alleged mistake is so clearly and conclusively established that he would not hesitate to reform the instrument, the questions of fact on which the right to equitable relief depends should not be submitted to the jury.

In this case, it may be conceded there was some evidence tending perhaps in a slight degree to show the mistake alleged, but was it of such a clear, precise and indubitable character as would warrant a chancellor in reforming the note ?   We think not, and therefore the learned judge erred in submitting the question of mistake to the jury.

Evidence was introduced tending to prove that the note in suit was given in renewal of a former note payable to the order of and indorsed by plaintiff, and the jury was instructed that if such was the fact, they might infer therefrom that the parties to the note in suit intended it should be filled and indorsed precisely as the former note was, and that by mistake it was not so done.   In this we think there was error.   The assumed fact, which the evidence tended to prove and which may have been found by the jury, did not warrant the inference they were permitted to draw therefrom.   In view of all the testimony, the defendant failed to present such evidence of mistake as warranted the submission of that question to the jury.

Judgment reversed and a venire facias de novo awarded.